CARL LANNING v. STATE OF NEBRASKA.

FILED DECEMBER 30, 1922. No. 22793.

Rape. Defendant was convicted of committing a rape upon the person of a female child under the age of 18 years, to wit, of the age of 16 years, and not previously unchaste. Held, that there is sufficient evidence to support the verdict and that the record is without reversible error.

ERROR to the district court for Richardson county: JOHN B. RAPER, JUDGE. Affirmed.

Jean B. Cain and F. A. Hebenstreit, for plaintiff in error.

Clarence A. Davis, Attorney General, Charles S. Reed and R. C. James, contra.

Heard before MORRISSEY, C. J., ALDRICH, DAY and DEAN, JJ., REDICK and SHEPHERD, District Judges.

DEAN, J.

Carl Lanning, defendant, was indicted by a grand jury in and for Richardson county, October 21, 1921, and by that body charged with having forcibly committed a rape upon the person of Viva Nichols, a female child under the age of 18 years, to wit, of the age of 16 years, and not previously unchaste. When the case was tried in the district court the jury found the defendant guilty. Thereupon the court sentenced him to the state reformatory for men for a period of three years. Defendant prosecutes error.

The statute under which the prosecution is laid reads: "Whoever shall have carnal knowledge of any other woman, or female·child, than his daughter or sister, as aforesaid, forcibly and against her will; or if any male person, of the age of eighteen years or upwards, shall carnally know or abuse any female .child under the age of eighteen, years, with her consent, unless such female child so known and abused is over fifteen years of age and previously unchaste, shall be deemed guilty of a rape, and shall be imprisoned in the penitentiary not more than twenty nor less than three years." Comp. St. 1922, sec. 9551.

On the date of the alleged offense, namely, June 8, 1921, the prosecutrix was a month and a day past the age of sixteen years. The defendant then lacked three months of being twenty. On the evening of that day defendant called at the home of the family where the prosecutrix was employed as a domestic and she accepted his invitation to go buggy-riding with him. After they had ridden about a mile she discovered that a young man named John Rutz, who was about defendant's age, was standing on the back of the buggy, and when he found that his presence was discovered by her he got into the buggy and rode with them. Shortly afterward, upon her request, defendant told her that he would return with her to her home. Instead of taking her home as he promised, defendant permitted Rutz, who was driving, to pass the intersection where they should have turned off. This was done, on the pretext of Rutz, that they might go to the home of a neighbor girl, whom he named, and have her accompany them in their drive. Instead of doing so they came up to a schoolhouse, and Rutz, who did most of the talking at the time, proposed that they all get out, but she refused. The buggy was then driven, according to prosecutrix' evidence, to a lonely spot on the bank of a creek having its slope bordered with timber and underbrush. No houses were anywhere near. At this point the buggy was stopped and both of the young

men jumped out. Rutz tied the horses to a tree. She remained in the buggy, but the defendant told her she had to get out. She refused. After more solicitation on his part, and her continued refusal, defendant jerked the buggy cushion out from under her, and throwing it down beside the buggy he seized her by the hand and, dragging her violently out of the buggy over the wheels to the ground, he threw her down on the cushion, where he committed the offense for which he was indicted. She said that she resisted to the extent of her ability but that he overpowered her. As soon as defendant accomplished his purpose Rutz in a like manner violated her person.

Immediately thereafter defendant and Rutz promised to take her home, and again upon their promise she got in the buggy, but instead they drove to a vacant church house. It was now about 10:30 or 11 o'clock in the nighttime. They stopped and told her she had to get out. She again refused. The two young men then, each grabbing a hand, forcibly pulled her out of the buggy and took her into the church, where the defendant and Rutz, in the order named, again repeated the same offense. She testified that Rutz, apparently on account of her resistance, became very angry and applied to her a vile and abusive epithet, and at the same time drawing a knife from his pocket, and, accompanied by additional threats, slightly wounded one of her legs. All of this was done in the presence and hearing of defendant. It may here be added that all of the assaults and the offenses which were perpetrated by defendant and Rutz on the night in question, upon the person of the prosecutrix, were committed in the presence of each other. Upon their return to the home of her employer, between half past 12 and 1 o'clock in the morning, she told both of her assailants that she was going to tell about their conduct, to which Rutz, in the presence and hearing of defendant, replied: "You better not, you will never be able to tell anything else."

Besides the evidence of the prosecutrix, a disinterested

witness testified that Carl admitted his guilt to him and at the same time, with a vile epithet, he dared the witness to tell it. Another witness testified that he heard defendant say to Rutz: "Have you heard anything of the deal we pulled off with Pete (the childhood nickname of the prosecutrix)?" and that Carl, with an oath, said: "No and we won't, she is afraid to tell it." Another witness, a married woman living in the neighborhood, overheard defendant admit his guilt and at the time he dared his hearer to tell it. It may here be noted that the prosecutrix told her father and mother about the occurrence about a month after it happened.

Defendant did not testify. Consequently he did not deny the act of sexual intercourse, but for his defense he relies mainly upon the contention that the prosecutrix was unchaste at the time of the commission of the alledged offense. He maintains that under section 9551, Comp. St. 1922, the court should have instructed the jury to return a verdict in his favor. To establish the plea of unchastity defendant introduced the testimony of several young men of about his own age. They testified that they had illicit relations with the prosecutrix more than three years before the time of the trial then in progress. One or two testified to illicit relations with her as having occurred but a few days before June 8, 1921, one of them being, as we have seen, John Rutz, hereinbefore mentioned, who is now under bond to make an appearance in court. Each of them related their respective stories in detail. The jury heard their evidence and that of the prosecutrix who, upon a searching cross-examination, denied their every allegation. She further testified that she had never had sexual intercourse with any male person until the night of June 8, 1921. Evidently the jury believed her and disbelieved her accusers. Where, as in the present case, there is sufficient evidence to support the verdict it is elementary that we will not hold that the jurors, as triers of fact, are not justified in their deliberate conclusion.

There is evidence in the record tending to prove that the general reputation of the prosecutrix for chastity in the community where she resided from her infancy was good. Aside from the testimony of the young men, not a voice was raised to contradict the evidence of the witnesses produced by the prosecution on this point.

The stories of the young men, in their attempts to traduce the reputation of the prosecutrix, are improbable in the highest degree. Their grossly sordid recitals, with respect to the illicit relations which they maintained they had, and which they said they had seen others have with the prosecutrix, are unprintable and almost quite beyond belief. It is evident that the jury so considered them when they retired for consideration of their verdict.

Other assignments of alleged error are made with respect to the information and with respect to some of the instructions. Upon examination we do not find that the defendant has been prejudiced in his substantial rights upon the merits in the respects noted by counsel.

The conclusion is that there is sufficient evidence to support the verdict. The judgment of the district court must be and it hereby is

AFFIRMED.

MORRISSEY, C. J., dissenting.

I dissent from the conclusion reached by the majority. This cause was tried and submitted on the theory, not that defendant was guilty of having carnal intercourse with the prosecuting witness by force, but with her consent, and the testimony mentioned in the majority opinion which indicates that force and violence were used is based solely upon the testimony, in chief, of the complaining witness. On cross-examination she testified freely and frankly that she offered no resistance. Her statement in regard to the assault upon her with a knife by one of the party is also fully discredited by her own testimony, given on cross-examination. The trial court evidently took the view that no force was used and instructed the jury on that theory. I shall not set out the scandalous

story contained in the bill of exceptions, but, to my mind, the testimony shows conclusively that prior to the time set out in the indictment prosecutrix was unchaste and that the evidence is insufficient to support the finding of the jury.